OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES
CHAPTER 177, AFSCME, AFL–CIO, Appellee,

v.

FOREST HILLS LOCAL SCHOOL DISTRICT
BOARD OF EDUCATION, Appellee;

State Employment Relations Board, Appellant.

[Cite as *Ohio Assn. of Pub. School Emp. Chapter 177, AFSCME, AFL–CIO
v. Forest Hills School Dist. Bd. of Edn.* (1992), 73 Ohio App.3d 771.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1095.

Decided May 7, 1992.

*Lucas, Prendergast, Albright, Gibson & Newman* and *Rankin M. Gibson,* for appellee, Ohio Assn. of Public School Employees Chapter 177, AFSCME AFL–CIO.

*Ennis, Roberts & Fischer Co., L.P.A.,* and *J. Michael Fischer,* for appellee, Forest Hills Local School District Board of Education.

*Lee I. Fisher,* Attorney General, and *Barbara A. Serve,* for appellant.

---

BOWMAN, Judge.

On April 18, 1988, the Forest Hills Local School District Board of Education ("board") held a board meeting where a Revised Policy Manual was presented to the public. Part of the Revised Policy Manual, specifically Section 4–33 Fire Prevention and Safety, prohibited smoking in any district building. The Revised Policy Manual was adopted by the board at its regular meeting on May 16, 1988 and was to become effective on August 1, 1988.

The Ohio Association of Public School Employees Chapter 177, AFSCME, AFL–CIO ("OAPSE") is recognized by the board as the sole and exclusive collective bargaining representative for all full-time and regularly employed short-hour employees in food service, custodial, clerical, transportation and maintenance who are regularly assigned to a work schedule. On April 22, 1986, the board and OAPSE entered into a contract agreement for the purpose of arriving at negotiated contractual agreements concerning salaries, fringe benefits and working conditions.

On June 2, 1988, Richard Conway, President of OAPSE, wrote to Dr. Dennis Devine, Assistant Superintendent, requesting that the board and OAPSE bargain on the matter of the smoking ban. On June 3, 1988, Devine replied that the board did not consider the policy to be a mandatory subject of collective bargaining and declined to negotiate.

On August 10, 1988, Carol Burns, President–elect, OAPSE, wrote Devine informing him that she personally filed a formal grievance under the collective bargaining agreement with her immediate supervisor against the Forest Hills Local School District regarding the ban of smoking in district buildings that went into effect August 1, 1988. The grievance asserted that the smoking ban constituted a change in working conditions and violated the collective bargaining agreement between OAPSE and the board.

On August 12, 1988, Diane Method, Burns' supervisor, sent a memo to Devine indicating that, on August 10, 1988, Burns had asked her if she could smoke in the building. At that time, Method explained to Burns that she could not because it would violate board Policy 4–33(E). Burns then handed

her a form labeled a Level 1 Grievance. Method read the form and responded that, by denying her the right to smoke in the building, she had not violated, misapplied, or misinterpreted the collective bargaining agreement and, therefore, she could not resolve the issue of the complaint.

On August 15, 1988, Devine wrote Burns and informed her that the grievance she filed should suffice for the OAPSE unit and that he did not see any reason to generate more than one grievance on the issue. He also stated that the policy was uniform throughout the district and affected all employees in all of the buildings the same.

The grievance was processed to arbitration and, on April 25, 1989, a hearing was held by arbitrator, William C. Heekin. On June 21, 1989, the arbitrator issued his decision finding that the board's action prohibiting smoking in all school district buildings did not conflict with any provisions of the parties' collective bargaining agreement. The arbitrator further found that the rule change applied equally to all individuals in school district buildings and, thus, not only treated all classes of employees the same, but also did not operate in a discriminatory fashion. Further, the rule change did not result in an absolute prohibition of employees smoking because they could continue to smoke during working hours and on school grounds, just not in the school buildings. Because the board's decision was based on logic, reason and considered all the interests of all of the parties involved, the arbitrator denied the grievance.

On June 17, 1988, prior to the grievance being filed, OAPSE filed an unfair labor practice charge against the board alleging violations of R.C. 4117.-11(A)(1) and (5), in that the board committed an unfair labor practice when it unilaterally adopted a no smoking policy without collective bargaining.[1]

At the March 30, 1989 meeting of the State Employment Relations Board ("SERB"), SERB found probable cause to believe that the board committed an unfair labor practice in violation of R.C. 4117.11 and ordered that a complaint be issued. The complaint was issued on May 31, 1989, and an evidentiary hearing was scheduled.

Prior to the hearing, on August 7, 1989, the board filed a motion to dismiss, asserting that the arbitrator's decision was dispositive of the case pending before SERB. Both OAPSE and the Attorney General as counsel for SERB filed memoranda contra the motion to dismiss. On September 13, 1989, SERB

---

1. On June 22, 1988, the Forest Hills Teachers Association, OEA–NEA, also filed an unfair labor practice charge against the board charging that the board refused to bargain by reason of its unilateral action. This charge was consolidated with the charge filed by OAPSE.

granted the motion and dismissed the unfair labor practice charge with prejudice.

On September 21, 1989, OAPSE appealed SERB's granting the motion to dismiss to the Franklin County Court of Common Pleas. Although SERB filed a notice of appearance on October 4, 1989, it was never notified of any proceedings in the case.

After OAPSE and the board filed briefs on the issues, the court, on December 28, 1990, rendered its decision finding that SERB erred in granting the motion to dismiss. The court held that, once SERB determined that probable cause existed, it was required to hold a hearing and, because a hearing is required, SERB erred when it granted the board's motion to dismiss. The trial court then remanded the case to SERB for a hearing. SERB filed a motion for reconsideration of the trial court's decision and, although the motion for reconsideration was granted, on July 29, 1991, the trial court issued a new order reaffirming its prior decision.

SERB now brings this appeal; however, it has not expressly assigned an error for our review despite the clear mandate of App.R. 16(A)(2). Instead, it has set forth an "argument" which this court will consider as its assignment of error and which states:

"I. The lower court lacked jurisdiction to consider a State Employment Relations Board order to defer to arbitration.

"A. SERB provided all parties with the opportunity to express their position on the Motion to Dismiss."

In reviewing a determination of a court of common pleas on an appeal from SERB, an appellate court may reverse only upon a showing that the trial court abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Beacon Journal Pub. Co. v. Stow* (1986), 25 Ohio St.3d 347, 25 OBR 399, 496 N.E.2d 908.

SERB asserts that its review of the record, including the arbitrator's decision and its decision to leave the parties to their contractual remedies and not proceed with the unfair labor practice charge, was an administrative determination not to prosecute and was not a decision on the merits. Because this determination was not an adjudication, SERB asserts that this court has no jurisdiction to review its administrative decisions and cites *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL–CIO v. Dayton City School Dist. Bd. of Edn.* (1991), 59 Ohio St.3d 159, 572 N.E.2d 80.

In *Dayton*, the court held, at the syllabus:

"A decision by the State Employment Relations Board whether or not to *issue a complaint* in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and 4117.13(D)." (Emphasis added.)

The case before this court does not involve a decision by SERB whether or not to issue a complaint; instead, it involves the issue of whether SERB is required to hold a hearing once a complaint is issued.

■ In *Dayton,* the Supreme Court stated that, when an unfair labor practice charge is filed, SERB is obligated to investigate the charge and, if probable cause is found to believe a violation has occurred, then SERB is to issue a complaint and is to conduct a hearing. These obligations are more specifically spelled out in R.C. 4117.12(B), which provides:

"When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge. * * * "

SERB asserts that it provided all of the parties a non-oral opportunity to present their positions with regard to the motion to dismiss. SERB further asserts that no party made a request for an oral hearing on the motion and, at the time it decided the motion, it had the entire record regarding all of the issues before it.

Although SERB may have had the entire record before it in deciding the motion to dismiss, SERB's order granting the motion to dismiss states only:

"On March 30, 1989, the Board found probable cause to believe that an unfair labor practice had been committed * * *. A complaint was issued and the matter was directed to hearing. Prior to the hearing, the Forest Hills Local School District Board of Education (Respondent) filed a motion to dismiss contending that the matter had been resolved by a grievance arbitration award involving the Ohio Association of Public School Employees (Intervenor) * * *.

"With regard to the instant case, the Board grants the motion. The complaint is dismissed and the unfair labor practice charge is dismissed with prejudice."

Thus, the order does not indicate that SERB had an entire record before it, nor does it indicate that SERB deferred to the decision of the arbitrator or any of the other choices enumerated in *In re Miamisburg School Dist. Bd. of Ed.*

(Jan. 15, 1986), SERB 86–001.[2]  In *Hocking Technical College v. State Emp. Relations Bd.* (1990), 70 Ohio App.3d 18, 590 N.E.2d 370, this court stated that it would be beneficial if SERB would give more detailed explanations, as well as specific reasons, for its decisions, so the courts would be aided in reviewing SERB's orders.  Although that might have been helpful in this case, nothing can negate the clear mandate of R.C. 4117.12(B), which requires that, once SERB finds that there is probable cause to issue a complaint and a complaint is issued, SERB is required to conduct a hearing.  This is not to suggest such a hearing need be lengthy but, pursuant to R.C. 4117.12(B)(1), the board must hold a hearing and determine whether an unfair labor practice was committed as set forth in R.C. 4117.12(B)(3).

Because this court finds that the trial court did not abuse its discretion in finding that SERB was required to hold a hearing prior to granting the motion to dismiss, SERB's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETREE and DESHLER, JJ., concur.

---

**2.** In *Miamisburg,* SERB determined that the grievance procedure followed by arbitration and the filing of an unfair labor practice charge are two remedial processes which are compatible.  If both a grievance and an unfair labor practice charge are filed, SERB has determined it has the following options:

"1) [R]etain jurisdiction of a pending ULP/grievance until the grievance procedure is exhausted or the parties terminate it.  Should the grievance not be settled or the ULP not be withdrawn, the Board can provide a limited review of the arbitration decision under its retention of jurisdiction to determine whether the ULP issues were considered and decided in conformity with Due Process of law in the arbitration proceeding.  If the review discloses that the arbitration process has not provided procedural or substantive Due Process, the Board will process the ULP.  Otherwise the ULP will be dismissed;

"2) [D]ecide that an employee proceeding under a grievance procedure provided by a collectively bargained contract has waived statutory rights to ULP process unless the ULP involves the collective bargaining representative in a conflict of interest or failure in its duty to fairly represent;

"3) [P]rocess a conflict of interest ULP/grievance under the statutory procedure because of the obvious inadequacy of the contract procedure when the claim is against the union in whole or in part;

"4) [G]o immediately to the statutory ULP process without deferring to the grievance procedure when a critical policy issue is raised by the ULP/grievance;

"5) [D]ismiss the ULP and permit the grievance to be resolved in the contractual procedure when the procedure is capped by arbitration and has no policy or conflict of interest implication;

"6) [T]reat the ULP/grievance as strictly a contract issue and leave the parties to their contract and whatever judicial remedies are available under it."  (Footnotes omitted.)

SERB stated that it may exercise any one of these options, or some combination of them, and that the option chosen will be determined on a case-by-case basis.  We need not determine whether this list of options comports with SERB's obligations pursuant to R.C. Chapter 4117.